UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

HERVIC ST. LOUIS, A# 74-239-043,

                              Petitioner,

                                                              **DECISION AND ORDER**
                v.                                                                 10-CV-951A

MARTIN HERON et al.,

                              Respondents.

───────────────────────────────

**I.    INTRODUCTION**

On November 24, 2010, petitioner Hervic St. Louis filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the legality of his continued immigration detention. On February 7, 2011, respondents filed papers in opposition to the petition. Respondents argue that petitioner's detention should continue under 8 U.S.C. § 1231(a)(1)(C) because he has hindered his removal by failing to provide information that the British Consulate needs to confirm his identity and to issue a travel document. On May 5, 2011, the Court directed respondents to file supplemental information clarifying the ways in which petitioner has hindered his removal. Respondents filed that supplemental information on June 8, 2011. Petitioner filed his own supplemental papers on June 22, 2011. The Court has deemed the matter submitted on

papers pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons below, the Court denies the petition.

## II. BACKGROUND

This case concerns petitioner's attempt to end his immigration detention while he awaits final removal to Great Britain. Petitioner is a 34-year-old native and citizen of Great Britain. Petitioner was admitted to the United States at New York City on August 31, 1985, as a non-immigrant visitor for pleasure with authorization to remain in the United States until March 11, 1986. When petitioner overstayed his visa, respondents charged him on March 22, 1986 with being subject to removal from the United States under 8 U.S.C. § 1231(a)(1)(B).

The first of petitioner's criminal convictions occurred while his immigration proceedings were pending. On June 14, 1993, petitioner was convicted of first-degree robbery in violation of N.Y. Penal Law § 160.15. Petitioner was sentenced to a term of imprisonment of 18 to 54 months. On June 12, 1996, petitioner was released from state custody on an immigration bond.

Petitioner's removal proceedings concluded shortly thereafter, but he ignored the result of those proceedings. On July 3, 1996, respondents ordered petitioner removed to Great Britain. Petitioner did not appeal that order to the Board of Immigration Appeals. On December 16, 1996, respondents issued a letter to petitioner directing him to surrender to immigration authorities on

January 3, 1997. Petitioner failed to surrender on that day, thereby breaching his bond and making him a fugitive.

Petitioner's second criminal conviction occurred while he was a fugitive. On October 7, 1998, petitioner was convicted on two counts of criminal possession of a weapon, in violation of N.Y. Penal Law §§ 265.02 and 265.03, and one count of second-degree assault, in violation of N.Y. Penal Law § 120.05. Petitioner was sentenced to a term of imprisonment of 154 months. Respondents located petitioner while he was in state custody and took him into federal immigration custody when his sentence expired on May 21, 2010. Petitioner has been in continuous immigration custody since then.

In support of the petition, petitioner argues that he should be released pending removal because his removal is not reasonably foreseeable. According to petitioner, his 90-day removal period under 8 U.S.C. § 1231(a)(1)(A) expired long ago. Additionally, the six-month period of presumptively reasonable detention defined in *Zadvydas v. Davis*, 533 U.S. 678 (2001), also has expired, with respondents unable to establish grounds for further detention. To the extent that respondents have accused him of hindering his removal, petitioner counters that respondents have not cited to any such conduct that occurred after December 2010. Petitioner concludes from this timeline that, even if he did hinder his removal initially by providing false information or failing to cooperate, respondents still cannot explain why they have been unable to complete his

3

removal over the past seven months and counting.  In this sense, petitioner likens his situation to the situation that this Court addressed in *Gumbs v. Heron*, No. 09-CV-506, 2009 WL 2958002 (W.D.N.Y. Sept. 11, 2009) (Arcara, *C.J.*).

In opposition to the petition, respondents argue that petitioner has hindered his removal so much that he has made the British Consulate wary of accepting him without more proof of identification, which he refuses to provide. In the supplemental information that the Court directed them to file, respondents pointed to five occasions in 2010 when petitioner provided false information about his native country, his hometown, and his parents.  As a result, according to respondents, the British Consulate will not issue a travel document without further proof of identification such as a birth certificate, school records, and communication with family members.  On five occasions in 2010 and early 2011, petitioner refused to provide requested information or to sign releases that would have allowed respondents to obtain that information.  Given the doubt that petitioner himself created about his identity and given his refusal to resolve those doubts, respondents argue that petitioner's removal period has been extended through the present time.  Further, respondents argue that petitioner's history of criminal convictions and breaches of bail conditions make him a risk to the community and unlikely to comply with any bail conditions that might be set in the future.

## III.   DISCUSSION

As petitioner's history indicates, the central question in this case is whether his removal period ever expired and triggered the assessment of reasonably foreseeable removal required by *Zadvydas*.  An alternative question is whether, regardless of the expiration of the removal period, petitioner may be held pursuant to respondents' finding that he is a danger to the community.

The rules governing petitioner's removal period are straightforward. "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(1)(A).  The parties do not dispute that petitioner's removal period began on May 21, 2010, when respondents received him from state custody.  *Id.* § 1231(a)(1)(B)(iii) ("If the alien is detained or confined . . . , [the removal period begins on] the date the alien is released from detention or confinement.").  The removal clock for any given petitioner will not necessarily end at exactly 90 days.  "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.* § 1231(a)(1)(C).

Here, petitioner essentially has ground his removal process to a halt because he gave the British Consulate reason to doubt his identity. Petitioner has provided false information about his country of origin, claiming to be a native of the United States when in fact he is a native of Great Britain. Petitioner has provided false information about his parents, complicating the search for his birth records. Petitioner also has provided false information about his hometown, again complicating the search for his birth records. *Cf. Powell v. Ashcroft*, 194 F. Supp. 2d 209, 211 (E.D.N.Y. 2002) ("Petitioner's conflicting statements and the difficulties they have caused respondents in effectuating his removal belie his claim that he has cooperated with the efforts of the INS to remove him . . . . [Petitioner] has acted to prevent his removal within the meaning of 8 U.S.C. § 1231(a)(1)(C). Therefore, . . . petitioner's removal period has been extended pursuant to that provision and that his continued detention more than 90 days after his order of removal became final does not entitle him to habeas corpus relief.") (citations omitted). Releasing his school records and helping with the search for his birth records would reassure the British Consulate of petitioner's identity, but he has refused to provide that assistance. Additionally, petitioner has refused to help respondents locate and contact his mother, who could go a long way toward resolving the uncertainties that petitioner created. *Cf. Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003) ("We therefore join the existing chorus of courts and hold that an alien cannot assert a viable constitutional claim

6

when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him."). In short, there is reason to believe that petitioner has created enough uncertainty about his identity that the British Consulate reasonably wants further assurances of who he is before accepting him. Under these circumstances, the Court finds that petitioner's removal period continues through the present time.

In the alternative, the Court notes that petitioner has been convicted on two separate occasions of violent felonies under New York law. Petitioner also has violated conditions of bail in the past. Because this history would create multiple additional grounds for removal under 8 U.S.C. § 1227, respondents acted reasonably in deciding to keep petitioner detained as a risk to the community. Therefore, even if petitioner's initial removal period had expired, 8 U.S.C. § 1231(a)(6) would justify his present detention until he resolves the doubts that he himself created about his identity. *Cf. Arthur v. Gonzales*, Nos. 07-CV-6158, 07-CV-6473, 2008 WL 4934065, at *15 (W.D.N.Y. Nov. 14, 2008) (Siragusa, *J.*) (citing a petitioner's criminal history as a basis to continue detention under 8 U.S.C. § 1231(a)(6)).

The Court's prior holding in *Gumbs* does not require a different conclusion. *Gumbs* featured no conduct by that petitioner to hinder his removal through false information and refusals to provide other information. The respondents in *Gumbs* held the petitioner for approximately 19 months for no

reason other than "the implied basis that the longer the detention lasted, the more imminent the issuance of the travel document would become." *Gumbs*, 2009 WL 2958002, at *2. A review of the type that the Court conducted in *Gumbs* may become necessary in the future if petitioner does provide clarifying information and respondents do not actively pursue it or make use of it. Such a review is not necessary at this time, however.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court denies the petition for a writ of habeas corpus (Dkt. No. 1).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. U.S.*, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of the Court shall close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: July 12, 2011